**Oliver Lee KIRKLAND and Elizabeth Smith, Appellants,**

v.

**Paul H. PRESTON and Luke Moore, Appellees.**

**No. 20334.**

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 10, 1967.

Decided by Judgment Entered Jan. 19, 1967.

Opinion Rendered Sept. 14, 1967.

Mr. William J. Garber, Washington, D. C., for appellants.

Mr. Roger A. Pauley, Atty., Dept. of Justice, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker and Thomas Lumbard, Asst. U. S. Attys., were on the brief, for appellees. Mr. James A. Strazzella, Asst. U. S. Atty., also entered an appearance for appellees.

Before EDGERTON, Senior Circuit Judge, and FAHY* and WRIGHT, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge.

On June 1, 1966, the Chief Judge of the District Court, acting in the role of chief executive for the District of Columbia pursuant to 23 D.C.Code § 401(a) (1961),[1] issued warrants for the arrest of Oliver Lee Kirkland and Elizabeth Maria Smith with a view toward their extradition to the State of Florida. Before him at that time were various papers submitted by the Governor of Florida. These consisted of the affidavit of John Dowda of the Miami, Florida, Police Department, sworn to before a justice of the peace; an arrest warrant issued by the same justice of the peace; and a requisition form initialed by the Governor certifying the authenticity of the accompanying documents and formally demanding appellants' arrest and delivery up to Florida officials.

█ The police officer's affidavit read, in pertinent part, as follows:

"* * * [O]n the 23rd day of July A.D., 1965, in the County and District aforesaid [Dade County] one Oliver Lee Kirkland & Elizabeth Maria Smith DID THEN AND THERE: unlawfully, wilfully, maliciously and feloniously set fire to and burn or cause to be burned a certain building, to wit: The Hut Bar, located at 2280 S.W. 32nd Avenue, City of Miami, Dade County, Florida, a further and more particular description of said bar being to the affiant unknown, the said bar being the property of one Fredrich Ritter."

Apart from the filling in of date, place and ownership, this language mirrors with its alternative clauses the text of

---

* Circuit Judge Fahy became Senior Circuit Judge on April 13, 1967.

1. 23 D.C.CODE § 401(a), in pertinent part, reads:

"In all cases where the laws of the United States provide that fugitives from justice shall be delivered up, the Chief Judge of the United States District Court for the District of Columbia shall cause to be apprehended and delivered up such fugitive from justice who shall be found within the District, in the same manner and under the same regulations as the executive authorities of the several States are required to do by the provisions of sections 5278 and 5279, title 66, of the Revised Statutes of the United States * * *."

the Florida second-degree arson statute.[2] It is clear that affidavits framed like this one in the conclusory statutory language and lacking any identification of sources do not show probable cause under the Fourth Amendment. *See* United States v. Ventresca, 380 U.S. 102, 108–109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

In the course of the brief extradition hearing which followed appellants' arrest, the Chief Judge, over appellants' objection based on lack of probable cause, ruled: "I do not go into the matter of probable cause here." Concluding that appellants had been "substantially charged," he ordered them bound over for extradition. Appellants then pursued their *habeas corpus* remedy in the District Court which ruled that the affidavit was "sufficient" and discharged the writ. This appeal followed.

On January 19, 1967, a week after argument before this court, we entered our judgment, indicating that an opinion would follow. Stating in the judgment that the officer's affidavit "does not allege sufficient evidence of probable cause to justify arrest," we ordered that, unless the defective affidavit was successfully cured by February 2, the *habeas*

writ should be made absolute. No further documents were received from Florida, and on February 6 appellants were released from custody.

I

■ 23 D.C.CODE § 401(a) defines the procedures for extradition from the District of Columbia "[i]n all cases where the laws of the United States provide that fugitives from justice shall be delivered up," thus cross-referencing to 18 U.S.C. § 3182 (1964),[3] the basic federal statute on interstate extradition enacted by the Second Congress in 1793, 1 STAT. 302. Since then Section 3182, which incorporates most of the language from the Extradition Clause of the Constitution,[4] has not been altered or amended in significant respects.[5] Under its provisions extradition is dependent on submission to the asylum jurisdiction of "an indictment found or an affidavit made before a magistrate * * *, charging the person demanded with having committed treason, felony, or other crime." Appellants were not indicted, and hence authority for extradition, if any, must derive from the affidavit provision of Section 3182. Whether a police officer's af-

2. FLA.STAT.ANN. § 806.02, in pertinent part, reads:

"Any person who wilfully and maliciously sets fire to, burns or causes to be burned * * * any building or structure * * * whether the property of himself or of another, not included or described in the preceding section, shall be guilty of arson in the second degree * * *."

3. "Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be

arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged."

4. U.S.Const., Art. IV, § 2, cl. 2:
"A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

5. In recodification in 1948 the word "District" was twice inserted to make it clear that the District of Columbia was subject to § 3182 obligations. Act of June 25, 1948, c. 645, 62 STAT. 822. This had earlier been assumed. *E.g.*, Riley v. Colpoys, 66 App.D.C. 116, 85 F.2d 282 (1936).

fidavit supports extradition when it merely repeats the language of the criminal statute allegedly violated is a question relating to the proper construction of Section 3182. We hold that, for purposes of extradition, the Section 3182 "affidavit" does not succeed in "charging" a crime unless it sets out facts which justify a Fourth Amendment finding of probable cause.

## II

Before Wolf v. People of State of Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), made the Fourth Amendment applicable to the states through the Fourteenth, and Mapp v. State of Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), made it enforceable against them by the same sanctions and by application of the same constitutional standards as prohibit unreasonable searches and seizures by the federal government, the quantum of evidence needed for arrest in the individual states was not a matter of federal concern. Though a pre-*Wolf* constitutional law of arrest could perhaps have been developed directly from the Fourteenth Amendment's

"deprivation of liberty" clause, it apparently was not. And, in fact, only developments since *Wolf* and *Mapp* have made it clear that what those cases applied to the states was the whole of the Fourth Amendment, thereby transmuting the federal standard of probable cause into a minimal and uniform requirement of a valid arrest by state officers.[6]

Even before *Wolf* and *Mapp* were decided, we find a brace of federal and state cases indicating that in extradition proceedings the Section 3182 affidavit from the charging state had to show "probable cause," though not necessarily in the constitutional sense.[7] Yet this court, after once indicating that a probable cause finding was a prerequisite in Section 3182 proceedings generally, Blevins v. Snyder, 57 App.D.C. 300, 22 F. 2d 876 (1927), in another pre-*Wolf* case, Riley v. Colpoys, 66 App.D.C. 116, 85 F.2d 282 (1936), apparently approved a Section 3182 affidavit framed in the conclusory language of the demanding state's criminal statute.[8] Even in *Riley*, however, this court was careful to point out that the affidavit submitted *was* adequate

---

6. Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

7. United States ex rel. McCline v. Meyering, 7 Cir., 75 F.2d 716 (1934); Raftery ex rel. Huie Fong v. Bligh, 1 Cir., 55 F. 2d 189 (1932); Ex parte Hart, 4 Cir., 63 F. 249, 260 (1894); Ex parte Morgan, W.D.Ark., 20 F. 298 (1883).

    Although state cases are in considerable disarray, something like probable cause is a prerequisite for extradition under § 3182 from Colorado and perhaps New York, and also from New Jersey and Ohio. Henry v. McArthur, 122 Colo. 474, 223 P.2d 621 (1950); *compare* People ex rel. DeMartini v. McLaughlin, 243 N.Y. 417, 153 N.E. 853 (1926); Ex parte Fritz, 137 N.J.Eq. 185, 44 A.2d 414 (1945); In re Powell, 2 Ohio Supp. 222, 10 Ohio O. 54, 25 O.L.A. 417 (1937). *And see* In re Cooper, 53 Cal.2d 772, 3 Cal.Rptr. 140, 349 P.2d 956 (1960), construing like provision of the Uniform Criminal Extradition Act.

    Of the several federal and state cases which could be cited in opposition, *e.g.*, Collins v. Traeger, 9 Cir., 27 F.2d 842

(1928), it can justly be said that they bear on probable cause by implication only; the court's research has uncovered no case authority which in terms states that probable cause is not necessary.

    R. HURD, HABEAS CORPUS 605 (1858), finds that the affidavit must show probable cause; J. SCOTT, THE LAW OF INTERSTATE RENDITION (1917), though basically *contra*, *id.* at 150–152, finds a probable cause rule "humane and reasonable," *id.* at 234.

8. Only a single objection, however, was directed at that affidavit—that it was based exclusively on information and belief. No objection was framed in probable cause terms. Moreover, included in the *Riley* extradition papers was the affiant's additional follow-up affidavit detailing facts and sources undoubtedly sufficient to supply probable cause had the court directly confronted the question. It would have been permissible to read the two affidavits together. *See* Raftery ex rel. Huie Fong v. Bligh, *supra* Note 7. *Compare* Ex parte Hart, *supra* Note 7.

to effect an arrest under the law of the demanding state, Michigan.[9]

■ The Supreme Court's deepest judicial inquiry into the qualities of the "affidavit * * * charging" requirement of Section 3182 was in Matter of Strauss, 197 U.S. 324, 25 S.Ct. 535, 49 L.Ed. 774 (1905), decided long before *Wolf*.[10] There the court rejected the claim that under the Extradition Clause a suspect is not charged with a crime until his case is actually pending in a court of competent jurisdiction. Instead the Court ruled:

"* * * [D]oubtless the word 'charged' was used in its broad signification to cover any proceeding which a state might see fit to adopt by which a formal accusation was made against an alleged criminal. In the strictest sense of the term a party is

charged with crime when an affidavit is filed, alleging the commission of the offense, *and a warrant is issued for his arrest,* and this is true whether a final trial may or may not be had upon such charge. * * *" 197 U.S. at 331, 25 S.Ct. at 537. (Emphasis added.) [11]

Though *Strauss* indicates that an arrest warrant from the demanding state must accompany the affidavit, Section 3182 has never explicitly required that the magistrate before whom the affidavit is sworn issue such a warrant and the courts since *Strauss* have not found such a requirement by implication.[12] Nevertheless *Strauss* as well as *Riley* and almost all other pre-*Wolf* decisions indicate quite clearly that the Section 3182 affidavit should report or summarize enough evidence to justify issuance of an arrest warrant in the accusing state.[13] It then

9. 66 App.D.C. at 118, 85 F.2d at 284.

10. The Supreme Court in Pierce v. Creecy, 210 U.S. 387, 28 S.Ct. 714, 52 L.Ed. 1113 (1908), declined close inspection of a demanding state's indictment, and indicated in dictum that this would be true of the affidavit as well. This case, however, was decided long before *Wolf* and *Mapp* made state arrests a subject of federal court focus.

11. *See* the opinion of the first Attorney General, Edmund Randolph, a representative to the Constitutional Convention: "[T]his term ['charged'] is sufficiently technical to exclude any wanton or unauthorized accusation from becoming the basis of the demand." J. SCOTT, *supra* Note 7, at 27–28.

12. Application of Williams, 76 Idaho 173, 279 P.2d 882 (1955); Ex parte Riccardi, 68 Ariz. 180, 203 P.2d 627 (1949); People ex rel. Gates v. Mulcahy, 392 Ill. 498, 65 N.E.2d 21 (1946); State ex rel. Covington v. Hughes, 157 La. 652, 102 So. 824 (1925). *See* Fowler v. Ross, 90 U.S.App.D.C. 305, 312 n. 3, 196 F.2d 25, 31 n. 3 (1952). *Compare* § 3 of the Uniform Criminal Extradition Act, which asks that if an arrest warrant is issued it be included in the extradition papers. 9 U.L.A. 274 (1957).
Undoubtedly *Strauss* would be satisfied if the magistrate officially accepted or recorded the affidavit under some pro-

cedure equivalent to issuance of an arrest warrant. *See* Compton v. State of Alabama, 214 U.S. 1, 14, 29 S.Ct. 605, 53 L.Ed. 885 (1909); Collins v. Traeger, 9 Cir., 27 F.2d 842, 844 (1928).

13. Unless the "affidavit" clause of § 3182 is construed at least to require that the affidavit report or summarize enough evidence to justify issuance of an arrest warrant in the accusing state, the statute strays far beyond the constitutional text it has always been supposed to be implementing. *See* Com. of Kentucky v. Dennison, 65 U.S. (24 How.) 66, 105, 16 L.Ed. 717 (1861). It is not clear whether this alone would endanger § 3182 constitutionally. The Extradition Clause is often read as securing a demanding state's right to have a defendant extradited if its conditions are met, not the accused person's right to avert extradition when they have not been satisfied. *See* Note, 39 CORN.L.Q. 326 (1954).
Moreover, this interpretation of the "affidavit * * * charging" language of § 3182 is in harmony with common legal usage, for in many jurisdictions arrest warrants must issue exclusively on the basis of affidavits or complaints which themselves make out the evidentiary case for arrest. *E.g.,* Rule 4(a), FED.R. CRIM.P., applied in Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); IDAHO GEN. LAWS ANN. §§ 19–504 to 19–506 (1950);

follows that now, since *Wolf* and *Mapp*, the Section 3182 affidavit must also present facts sufficient to establish a showing of probable cause under the federal Fourth Amendment standards. For apprehension of a fugitive under Section 3182 is plainly a criminal arrest since it deprives him of his liberty for the purpose of insuring his presence at a criminal trial. *See Strauss, supra,* 197 U.S. at 333, 25 S.Ct. 535.

■ There is no reason why the Fourth Amendment, which governs arrests, should not govern extradition arrests.[14] Under its familiar doctrine arrests must be preceded by a finding of probable cause. When an extradition demand is accompanied by an indictment, that document embodies a grand jury's judgment that constitutional probable cause exists. But when the extradition papers rely on a mere affidavit, even where supported by a warrant of arrest, there is no assurance of probable cause unless it is spelled out in the affidavit

itself. Thus Fourth Amendment considerations require that before a person can be extradited on a Section 3182 affidavit the authorities in the asylum state must be satisfied that the affidavit shows probable cause.

### III

■ The law appreciates the hardship which extradition can involve: not only the suspension of one's liberty, but his deportation from the state in which he lives into another jurisdiction which may be hundreds of miles from his home.[15] The law accordingly surrounds the accused with considerable procedural protection to stave off wrongful rendition.[16] It is consistent with this concern for the accused's just treatment to recognize his right to require official confirmation of probable cause in the asylum state before extradition. This right to probable cause confirmation seems especially appropriate in view of the fact that the accused will have no access to an evidentiary preliminary hearing on prob-

NEV.REV.STAT. §§ 171.120 to 171.130 (1957); OKLA.STAT., Title 22, § 171 (1937); WIS.STAT.ANN. § 954.02 (1958).

In other jurisdictions, including Florida, the complaint can be supplemented by the magistrate's personal examination of the complainant or others. *E.g.,* FLA. STAT. §§ 901.01–901.02, F.S.A. (1944); ILL.ANN.STAT. 38, § 107–9 (1964); ARIZ. R.CRIM.PROC. 1, 2, 17 A.R.S. (1956). In these states, therefore, an affidavit can be sufficient to launch the process leading to arrest, yet not itself show probable cause.

14. It has never been suggested that the Extradition Clause of the Constitution affirmatively authorizes extradition arrests on a lesser basis than Fourth Amendment probable cause. Rather, this court has said that the Clause does not conflict with basic constitutional rights. Johnson v. Matthews, 86 U.S.App.D.C. 376, 381, 182 F.2d 677, 682, *cert. denied,* 340 U.S. 828, 71 S.Ct. 65, 95 L.Ed. 608 (1950).

15. *See* People of State of New York v. O'Neill, 359 U.S. 1, 12–18, 79 S.Ct. 564, 3 L.Ed.2d 585 (1959) (dissenting opinion of Mr. Justice Douglas). Modern transportation and communication facilities have, of course, reduced the incon-

venience of interstate travel. Note, however, that under § 2 of the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings—upheld in *O'Neill*—those compelled to travel between states are recompensed at the rate of $5 a day and $.10 per mile. 9 U.L.A. 93 (1957). There is no comparable provision in the extradition statute.

16. Principally, the factual finding implicit in the accused state's affidavit, or even indictment, that the accused was within the accusing state on the date of the crime has been held not conclusive; prior to placing the accused under extradition arrest, the asylum state executive must make his own confirming determination on the "fugitivity" question, Hyatt v. People ex rel. Corkran, 188 U.S. 691, 23 S.Ct. 456, 47 L.Ed. 657 (1903), and the accused can freely relitigate the issue in the course of his *habeas corpus* hearing, though there he must carry the burden of proof. *See* Moncrief v. Anderson, 119 U.S.App.D.C. 323, 342 F.2d 902 (1964), and 122 U.S.App.D.C. 289, 353 F.2d 460 (1965). The other litigable issue in *habeas corpus* is, of course, identity. *See* Annot., 98 A.L.R.2d 964 (1964).

able cause until he finally arrives in the accusing jurisdiction.[17]

In addition, the interests of the asylum state are advanced by its own probable cause determination. For it would be highhanded to compel that jurisdiction to lend its coercive authority, and the processes of its law, against even its own citizens in aid of an enterprise the key details of which remain in the dark. If, as here, it turns out that the prosecution against the fugitive is unfounded,[18] the asylum state will have expended its resources and given the legitimizing stamp of its judiciary to a cause which is at best futile, at worst arbitrary.

Recognizing a probable cause requirement in Section 3182, moreover, conflicts with no compelling interests elsewhere in the legal system. If the demanding state does have probable cause data, it will be no real inconvenience to record this evidence in the extradition papers.

Documenting probable cause in an affidavit is what the policeman in many jurisdictions, including the District of Columbia, must do if he is to secure an ordinary warrant for an arrest or search. And governors, or *habeas corpus* judges, will hardly be significantly burdened by having to study written submissions for probable cause in extradition cases.[19]

From all these considerations the court draws the conclusion that the terms of 18 U.S.C. § 3182 are not met unless the affidavit indicates to the asylum state executive that there is probable cause for believing the accused guilty and that *habeas corpus* is the appropriate remedy to test the validity of his judgment. Since the Florida Section 3182 affidavit was insufficient and this defect was not cured in the time provided by the court, release of the prisoners was mandatory.

17. In many, if not all, jurisdictions the right of the unindicted suspect, arrested with or without a warrant, to such a hearing has been firmly secured, *e. g.*, ALASKA R.CRIM.PROC. 5 (1963); ARIZ. R.CRIM.PROC. 16 (1956); W.VA.CODE § 62–1–8 (1966), the underlying principle being that defendants should not be subjected to serious inconvenience or prolonged detention absent careful judicial confirmation of the fact that probable cause for that detention exists.

18. Since "sufficient evidence of probable cause to justify arrest" was not forthcoming from Florida in the time allowed after our judgment of January 19, 1967, resulting in appellants' release, we assume that Florida had no additional evidence of probable cause to offer.

19. Analogies supporting a probable cause construction for the § 3182 affidavit come from Rule 40(b) (3), FED.R.CRIM.P., governing removal of a suspect from one to another federal district, and 18 U.S.C. § 3184 (1964), defining procedures for international extradition. Under the former's terms if an unindicted suspect for whom an arrest warrant has in fact been issued in one district is found in another district which lies in another state and more than 100 miles away, before removal he must be given a hearing before a judge or commissioner at which the issue is whether "there is probable cause to believe that the defendant is guil-

ty of the charge." Pursuant to § 3184, extradition "may" be ordered, but only upon a proper sworn "complaint" and after a hearing, also before a judge or commissioner, exploring "evidence of criminality," this construed to mean probable cause. Glucksman v. Henkel, 221 U.S. 508, 31 S.Ct. 704, 55 L.Ed. 830 (1911); United States ex rel. Petrushanky v. Marasco, 2 Cir., 325 F.2d 562 (1963).

True, each of the three situations—interstate rendition, federal removal and international extradition—has its own ideological characteristics. But as the Note of the Advisory Committee on Federal Rules makes clear, the general intention of Rule 40 is a practical one—to strike a just compromise between the valid conflicting interests of an accused and a distant prosecuting agency:

"The purpose of removal proceedings is to accord safeguards to a defendant against an improvident removal to a distant point for trial. On the other hand, experience has shown that removal proceedings have at times been used by defendants for dilatory purposes * * *. The object of the rule is adequately to meet each of these * * * situations."

And the Supreme Court has already advised us that on the question of the quantum of evidence needed for extradition the international and interstate rules are in "general harmony." *Strauss, supra,* 197 U.S. at 333, 25 S.Ct. 535.