**Frank GRANO**

v.

**STATE of Delaware.**

Superior Court of Delaware.

New Castle.

Sept. 22, 1969.

**770**

in this case, the Court feels that it would be helpful to review the proceedings to date and to review at some length the law governing extraditions. In this way, it is hoped that a more meaningful record will be made of this proceeding.

On November 6, 1967, an assistant district attorney for the Parish of Orleans filed an information in the Criminal District Court for the Parish of Orleans charging Frank Grano with simple burglary. Simple burglary is a felony. R.S. 14:2 and 14:62. On the same date, an arrest warrant was issued by the Judge of the Criminal District Court. The district attorney of the Parish of Orleans on April 14, 1969, made a sworn application to the Governor of Louisiana for requisition of Frank Grano alleging that Frank Grano was a fugitive and further alleging in his opinion that the facts stated in the information were true and that the prosecution of Frank Grano would result in his conviction. The application for requisition was further supported by a single affidavit of two police officers who attested that Grano's fingerprint was found on a metal box at the scene of the alleged burglary.

The Governor of Louisiana, pursuant to the application for requisition, on April 22, 1969, requested that Grano be extradited to the State of Louisiana. On May 19, 1969, the Governor of Delaware issued an arrest warrant for Mr. Grano. Frank Grano was arrested on the Governor's Warrant. On June 12, 1969, when he was brought before the Superior Court pursuant to 11 Del.C. § 2510, counsel for Mr. Grano appeared to contest the legality of his arrest. Habeas corpus proceedings were initiated on that date.

The defendant initially attacked the arrest on two grounds. First, he argued that the supporting documents were insufficient in that the information and related papers did not allege the crime with sufficient specificity. Second, the defendant contended that he was not in the State of Louisiana

Bernard P. Balick, Wilmington, for Frank Grano.

Francis A. Reardon, State Prosecutor, State of Delaware, Wilmington, for the State.

QUILLEN, Judge.

Since the proceedings in this case have taken some time, since there has been various correspondence, since there is little Delaware case law on extradition, and since there will be further proceedings

on the date the crime was allegedly committed.

■ As to the first ground, the Court ruled from the Bench that the supporting documents were sufficient. The technical sufficiency of the indictment or information of the demanding State is not material on habeas corpus. Scott and Roe, Habeas Corpus, p. 391. Under Louisiana law, prosecution for a non-capital offense may be instituted by information. C.Cr.P., Art. 382. An information is a written accusation of a crime made by a district attorney or an assistant district attorney and signed by him. C.Cr.P., Arts. 8 and 384. This information charges an offense, simple burglary, R.S. 14:62. Moreover, although not material here, the information appears to be in the proper form. C.Cr.P., Art. 463. Thus, the ruling made from the Bench on June 12th is confirmed.

As to the second ground raised by the petitioner, the Court ruled that he was entitled to challenge his arrest on the ground that he was not in Louisiana on the date of the alleged crime and that the burden of proof on that issue was on the petitioner. 4 Wharton's Criminal Law and Procedure (Anderson Ed.1957) § 1674, pp. 400–401.

The defendant requested and was given time to submit evidence designed to prove that he was not in Louisiana on the date in question. The hearing was interrupted at this point solely for this purpose. The Court ruled from the Bench, that since the defendant had been arrested on a Governor's Warrant, as distinct from a bench warrant, pending completion of the habeas corpus proceeding, the defendant was not entitled to bail. 56 A.L.R.2d 675; 11 Del.C.Ch. 25.

At the request of new counsel for the defendant, the Court by letter opinion dated August 19, 1969, reconsidered the question of bail and adhered to the original decision for the following reasons.

■ Where a person is held as a fugitive from justice under an extradition warrant, he should not be released on bail pending a decision in a habeas corpus proceeding to test the legality of his arrest. 8 Am.Jur.2d, Bail and Recognizance, § 11, p. 790. Buchanan v. State ex rel. Weiss, 166 So.2d 596 (Fla.App.1964); Ex parte Massee, 95 S.C. 315, 79 S.E. 97 (1913).

This generally accepted view is not altered by a constitutional provision similar to our own. In re Amundson, 74 N.D. 83, 19 N.W.2d 918 (1945). Compare also appeal cases such as Waller v. Jordan, 58 Ariz. 169, 118 P.2d 450, 143 A.L.R. 1349 (1941); State v. Quigg, 91 Fla. 197, 107 So. 409 (1926); Ex Parte Campbell, 147 Neb. 382, 23 N.W.2d 698 (1946). Contra Application of Haney, 77 Idaho 166, 289 P.2d 945 (1955). The Court did not decide the question of bail pending an appeal after a denial of the writ where different procedures, including Supreme Court Rules, may be applicable. See trial record in In re Dean, 3274 C.A. 968. See Annotations at 63 A.L.R. 1460 as supplemented 143 A.L.R. 1354.

The original decision as to bail was adhered to because the Court felt that overwhelming precedent from other jurisdictions required that result. See 35 C.J.S. Extradition § 19, p. 445.

Extradition is a specialized area of the law and this Court feels that the well established principles as to bail in extradition cases should be followed. It is difficult enough to deal with an alleged fugitive from another state without running the risk that he will once again become a fugitive or without inviting frivolous habeas corpus proceedings on technicalities which are designed primarily for the purpose of delay. This State has to meet its obligations to our sister states. A man charged with a crime ordinarily should raise his objections and defenses in the state bringing the charge.

As indicated above, after the requested delay in the habeas corpus proceedings was granted to the petitioner, a substitution of counsel was effected. The Court by letter

dated August 1, 1969, gave the defendant until September 8, 1969, to present the evidence he desired. At the request of petitioner's counsel, a further hearing was held on September 8, 1969. No evidence was presented by the petitioner which could not have been presented in June.

At the second hearing, the petitioner resisted extradition in two ways. First, he testified himself. On the reserved question of his presence in Louisiana on the date of the alleged crime, he denied that he was present. During his testimony, he also ·indicated that he thought his personal safety would be endangered if he were returned to Louisiana.

██ Grano's uncorroborated testimony that he was not in Louisiana on August 5, 1967 does not persuade the Court in review of the fingerprint evidence which was found on August 7, 1967. This factual claim is rejected. Nor can the Court properly consider the personal safety argument made by the petitioner. 39 C.J.S. Habeas Corpus § 39a(2) (I).

Secondly, at the September 8th hearing, the petitioner's counsel challenged the extradition on a new ground alleging the supporting documents were insufficient because they fail to show that a burglary took place by the direct personal knowledge of the affiants who signed the affidavit in support of the information. In regard to this question, the Court by letter dated September 12, 1969, said it had concluded that the question of the sufficiency of the supporting affidavit was a substantial one which should be considered notwithstanding its untimely presentation. Letter memoranda were invited and have been considered.

The law of interstate extradition in the United States begins with the Federal Constitution, Article 4, Section 2, Clause 2 which reads as follows:

"A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

It is interesting to note that a key word in the Federal Constitution is "charged". Although the Constitutional provision contains no enabling provision directly authorizing federal legislation, the provision was held in early Attorney General's opinion not to be self-executing as to forms and procedures and Congress supplemented it by the early passage of a federal interstate rendition statute. 1 Stat. at L. 1793, 302, 18 U.S.C.A. § 3181—§ 3195; Scott on Interstate Rendition, § 83. This federal statute is Constitutional. Prigg v. Pennsylvania, 16 Pet. (U.S.) 539, 620–621, 10 L.Ed. 1060 (1842). Its standards become the standards under federal law.

██ Under the federal statute, it becomes the duty of the asylum state to deliver a fugitive when the statutory requirements are met. Among the requirements made of the demanding state is the production of "a copy of an indictment found or an affidavit made before a magistrate of any state * * *, charging the person demanded with having committed treason, felony or other crime". 18 U.S.C.A. § 3182. The Constitution and the Act of Congress must be construed together. Scott on Interstate Rendition, § 83.

It is perhaps unfortunate that the federal statute has not been adjusted to reflect the more common use of informations in modern times, but it has not been. In the absence of an indictment, the requirement of an affidavit before a magistrate would appear to be inserted to meet the traditional requirements necessary to justify an arrest. Ex parte Rubens, 73 Ariz. 101, 238 P.2d 402 (1951).

If this be the intent, it would seem to follow that an affidavit before a magistrate under federal law does not succeed in "charging" a crime unless the affidavit sets out facts which justify a finding of

probable cause in accordance with the Federal Constitutional requirements of the Fourth Amendment. Kirkland v. Preston, 128 U.S.App.D.C. 148, 385 F.2d 670 (1967).

■ It is properly said that extradition under federal law is an absolute duty and not a matter of mere comity, subject to the pleasure of each state. In re Morgan, 244 Cal.App.2d 903, 53 Cal.Rptr. 642 (1966). While state laws cannot place limitations upon the extradition which is required by federal law, state legislatures may, consistent with Constitutional limitations, permit the Governor to surrender a fugitive on terms less exacting than those imposed by the Act of Congress. In re Morgan, *supra;* People ex rel. Matochik v. Baker, 306 N.Y. 32, 114 N.E.2d 194 (1953). The Uniform Criminal Extradition Act, which was enacted in Delaware in 1937, for example, expressly does so in providing for the extradition of persons, under certain circumstances, even when the person sought was not in the demanding State at the time of the crime. 11 Del. C. § 2506.

The Uniform Act, unlike the federal statute, expressly recognizes informations by providing that an "information supported by affidavit" will suffice in lieu of an indictment or an affidavit before a magistrate. 11 Del.C. § 2503. This statutory requirement of a supporting affidavit is in form at least less strict since the affidavit supporting the information does not have to be before a magistrate. 35 C.J.S. Extradition § 14(2), p. 412. Presumably, this is because the information itself is a formal allegation of a crime. Moreover, the information need not be based on the affidavit; the affidavit may be dated after the information. 35 C.J.S. Extradition § 14 (2), p. 412.

It then becomes necessary to determine the substantive requirements of an affidavit in support of the information. No case under the Uniform Act has been cited to me which indicates that the substance of an affidavit in support of an information

is measured by a standard less than that required when extradition is required by means of an affidavit before a magistrate. In one sense, this is somewhat strange because a duly filed information certainly attests to the fact that the person is "charged", to use the language of the Federal Constitution. Indeed, the Supreme Court said over a half a century ago that it could not be doubted that an information was sufficient to justify an extradition. In the Matter of Strauss, 197 U.S. 324, 25 S.Ct. 535, 49 L.Ed. 774 (1905) (dictum). Contra Ex parte Hart, 63 F. 249 (4th Cir. 1894). See also Hogan v. O'Neill, 255 U.S. 52, 41 S.Ct. 222, 65 L.Ed. 497 (1921).

■ Moreover, it is clear that, notwithstanding case law that holding that the finding of probable cause sufficient to support the issuance of a warrant of arrest is a judicial act required to be made of a neutral and detached judicial officer [Caulk v. Municipal Court, Del., 243 A.2d 707 (1968) and United States Supreme Court cases therein cited; Cf. State v. Ruotolo, 52 N.J. 508, 247 A.2d 1 (1968)], the mere filing of an information has special consequences in Louisiana. Under the Louisiana law, the Court has a duty to automatically issue an arrest warrant for a defendant, not previously in custody or at large on bail, when an information is filed. C.Cr.P., Art. 496. The filing of an information after a district attorney's investigation has official sanction comparable to an indictment by a grand jury. Comment (c), C.Cr.P., Art. 496. Any requirement of probable cause is met in the first instance by the finding of the district attorney which finding is considered to be made under oath based on the district attorney's oath of office. See State v. Smith, 114 La. 318, 38 So. 202 (1905); State v. Smith, 114 La. 322, 38 So. 204 (1905). Once arrested under this procedure, a defendant in a felony prosecution commenced by information can request a preliminary hearing, which the court may grant, for a judicial determination of probable cause. C.Cr.P., Arts. 292, 296.

While these provisions of the law are somewhat different than our law and practice and while they have Constitutional due process implications, they are not unique and, notwithstanding the philosophy expressed in the *Caulk* case and many others, similar procedures have recently withstood Constitutional attack. In re Davis, 126 Vt. 142, 224 A.2d 905 (1966). Moreover, such procedures compare strikingly to the traditional law authorizing arrest without a warrant when a peace officer has reasonable ground to believe that the person to be arrested has committed a felony. 11 Del.C. § 1906. For the purpose of this hearing, I think it must be accepted that the information alone, followed by a ministerial act in issuing the warrant, under Louisiana law justifies the arrest of Mr. Grano in the State of Louisiana, notwithstanding the fact that there has been no judicial determination of probable cause.

This Louisiana law is somewhat significant because of frequent general statements in the authorities that the sufficiency of the documents must be tested by the laws of the demanding state. 35 C.J.S. Extradition § 14(6). Ex parte Noel, Ky., 338 S.W.2d 903 (1960). Under the law of Louisiana, an affidavit in support of an information filed by the district attorney appears to add nothing insofar as the power to arrest is concerned. State v. Smith, *supra,* at 38 So. 203–204. This fact is highlighted by the Louisiana modification to the Uniform Criminal Extradition Act, which does not require an affidavit in support of an information for extradition purposes. C.Cr.P., Art. 263.

■ But Delaware law does require an affidavit in support of an information. 11 Del.C. § 2503. Even though the sufficiency of pleadings is to be tested by the law of the demanding state and as to technicalities, is generally not material in extradition proceedings, it would defeat the purpose of the Uniform Act for Delaware to vary the substantive requirements of an affidavit depending on the state making the demand. Rather, it would seem that our legislature in further implementation of the federal Constitution and statutes has placed a uniform standard on all demanding states that informations must have the support of an affidavit. The federal Constitution, the federal statute and the Uniform Act should be construed together to support the legislature's intent. Cf. Scott on Interstate Rendition, § 83. The affidavit requirement must be met under our law.

The question then becomes what is the affidavit requirement? It seems clear from statute that the requirement is more than verified application for rendition by the prosecuting authorities. 11 Del.C. § 2523(c). It seems equally clear from the statute that the requirement is more than the signature of the district attorney supported by his oath of office. 11 Del.C. § 2503. The relevant affidavit in this case then becomes the factual affidavit of the police officers.

The defendant argues that the affidavit must show the facts supporting the charge by the personal knowledge of the affiants. There is law to support such a view, some of which predates the Uniform Act. *Scott, supra,* p. 267; Ex parte Parker, Tex.Cr. App., 390 S.W.2d 774 (1965). It seems equally clear that other states broadly permit affidavits on information and not personal knowledge. People ex rel. Lacanski v. Backes, 19 Ill.2d 541, 169 N.E.2d 80 (1960). A middle ground seems to permit the affidavit to be on information and belief provided the sources are adequately described. Stark v. Livermore, 3 N.J. Super. 94, 65 A.2d 625 (1949).

■ The problem must be approached by determining why the affidavit is required. It is obviously required as precaution against the possibility of frivolous charges. Ex parte Fritz, 137 N.J.Eq. 185, 44 A.2d 414 (1945). An extradition is a significant interference with the liberty of the person and such interference should not be made unless the demanding state can demonstrate that it is justified.

Whether the problem is compared with the law of arrest or the law of binding over, we are by necessity approaching due process concepts which can conflict with Constitutional extradition concepts. The question is whether such due process concepts can be raised in the asylum state. It may well be that the affidavit requirement is a Constitutional requisite in that the Fourth and Fourteenth Amendments require that, before a person can be extradited, the asylum state must be satisfied by indictment or affidavit that there is probable cause to justify an arrest. Kirkland v. Preston, *supra*, at 385 F.2d 676. That point need not be decided. Even if the affidavit requirement for extradition is merely one of statute, it should be construed as requiring in the asylum state an affidavit basis to support the contention of the demanding state that there is probable cause to believe that an offense has been committed and that the person demanded committed it. Cf. State v. Buzine, Del., 4 Har. 572 (Super.Ct.1847). If the affidavit requirement is to have any significance of subbstance, probable cause must at least be required.

Independent of Constitutional grounds, the policy grounds to support the "probable cause" standard were ably set forth by the Court in Kirkland v. Preston, *supra*, at 385 F.2d 676–677 as follows:

"The law appreciates the hardship which extradition can involve: not only the suspension of one's liberty, but his deportation from the state in which he lives into another jurisdiction which may be hundreds of miles from his home. The law accordingly surrounds the accused with considerable procedural protection to stave off wrongful rendition. It is consistent with this concern for the accused's just treatment to recognize his right to require official confirmation of probable cause in the asylum state before extradition. This right to probable cause confirmation seems especially appropriate in view of the fact that the accused will have no access to an eviden-tiary preliminary hearing on probable cause until he finally arrives in the accusing jurisdiction.

"In addition, the interests of the asylum state are advanced by its own probable cause determination. For it would be highhanded to compel that jurisdiction to lend its coercive authority, and the processes of its law, against even its own citizens in aid of an enterprise the key details of which remain in the dark. If, as here, it turns out that the prosecution against the fugitive is unfounded, the asylum state will have expended its resources and given the legitimizing stamp of its judiciary to a cause which is at best futile, at worst arbitrary.

"Recognizing a probable cause requirement in Section 3182, moreover, conflicts with no compelling interests elsewhere in the legal system. If the demanding state does have probable cause data, it will be no real inconvenience to record this evidence in the extradition papers. Documenting probable cause in an affidavit is what the policeman in many jurisdictions, including the District of Columbia, must do if he is to secure an ordinary warrant for an arrest or search. And governors, or habeas corpus judges, will hardly be significantly burdened by having to study written submissions for probable cause in extradition cases."

See also Ex parte Fritz, *supra*.

It should be noted that the probable cause requirement here does not in effect require a preliminary hearing on habeas corpus. In the first place, the demanding state's case is usually presented solely by affidavit. In the second place, the requirement is merely one of an affidavit confrontation which can not be disputed be-yond the face of the affidavit by the person sought. It is akin to an ex parte application for an arrest warrant.

 If the probable cause standard is adopted, as this Court does adopt it, the sufficiency of the affidavit must be

measured by that standard. It is established, even at the preliminary hearing, that the rules of evidence do not strictly apply. 1 Wright, Federal Practice and Procedure, § 80, p. 142–143. In a concurring opinion, Circuit Judge Burger in Washington v. Clemmer, 119 U.S.App.D.C. 216, 339 F.2d 715, 724 (1964) said:

> "An arrest can be made, a warrant can issue and a Grand Jury can indict on hearsay and other forms of evidence not competent for admission at trial. See Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). A fortiori the intermediate step of deciding to hold an accused until a Grand Jury can consider evidence against him may be taken on such evidence."

It follows from this law that the affidavit can be on information and belief and need not be on the personal knowledge of the affiant, although the latter may be preferable. But such an affidavit on information and belief does not establish probable cause if it is merely stated in conclusionary statutory language and lacks any identification of sources. Kirkland v. Preston, *supra*, at 385 F.2d 673; Stark v. Livermore, *supra* at 65 A.2d 627. The authorities in the asylum state, in their neutral and detached executive and judicial functions, must judge for themselves the persuasiveness of the facts relied on to show probable cause. Cf. Caulk v. Municipal Court, *supra*, at 243 A.2d 708. The detached officials can not properly make a probable cause determination by relying on the conclusions of an "officer engaged in the often competitive enterprise of ferreting out crime." Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 99 L.Ed. 436 (1948); Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed. 2d 1503 (1958); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

The affidavit in this case first alleges in mere conclusionary language that the defendant committed a burglary on a given date at a given place. It then goes into excellent detail to show that the defendant's fingerprint was taken from a metal box which had been in a safe which was broken into. Notwithstanding the fact that the affidavit is given jointly by two police officers, a practice which sometimes makes it difficult to determine who is swearing to what, the identification of Mr. Grano is made on the basis of personal knowledge of the circumstantial evidence and proper reference to existing records. The difficulty is that the conclusionary statements to the fact that a burglary was committed are obviously based on information only and no source or detail as to such facts is supplied. If there be any doubt that the information is second hand, the testimony of the New Orleans policeman in this hearing, which shows he did not arrive at the scene until two days after the alleged crime, eliminates such doubt. I find that the mere conclusionary statements to support a corpus delicti are insufficient to show probable cause.

The question is then one of remedy. Mr. Grano, of course, seeks his immediate release on the basis of an illegal arrest because the Court here finds that the affidavit on which the Governor relied did not meet the probable cause standard. Formalistically and procedurally, the argument makes sense. But does it make practical sense and is it required by law?

The practical aspect is simply answered. It makes no sense to require the demanding state to reinstitute an entire new extradition proceeding because of a documentary defect which can be readily corrected in this habeas corpus proceeding if the evidence is available. This is especially true because an accused felon may again become a fugitive from at least facing his day in court. It is the very type of legal remedy which has justifiably made the criminal law system subject to policy criticism. Release of Mr. Grano at this stage should be avoided if it can be consistent with the law.

The problem is somewhat unique and there is little statutory assistance as to the nature of habeas corpus proceedings in extradition cases. The statute neither authorizes or prohibits the required documentary record to be supplemented.

■■■ By necessity, the Court must develop its own standards on habeas corpus. The statute does note in other areas that extradition calls for special standards as to arrest and commitment. 11 Del.C. §§ 2514, 2515 and 2517. There is in this instance an arrest warrant from Louisiana and a copy of a duly filed Louisiana information in addition to the Governor's Warrant. In preliminary hearings in this State, it is frequently the case that the matter is continued while the case is prepared and the accused is held for such period without a judicial determination of probable cause. Moreover, in this case, this objection was not raised by the accused until September 8 and not until the Louisiana authorities, who might have filled the gap by testimony on the day of the arrest, had departed from Delaware. I see no requirement of our law and practice which compels the release of Mr. Grano under these circumstances. By any standard of law, justice and common sense, it seems to me that this Court, in its discretion, in controlling the habeas corpus proceeding should be permitted to give the State a reasonable time to fill the affidavit gap. If this Court is wrong in this judgment, such judgment can be adequately tested.

The action suggested here, while somewhat unique, is not unprecedented. The case upon which so much reliance has been placed in this opinion is precedent for just such a procedure. Kirkland v. Preston, *supra*, at 385 F.2d 673. The reputation of the author of that opinion, J. Skelly Wright, as a protector of civil liberties is nationwide and he evidently saw no Constitutional problem with the procedure. While the Uniform Act was not the law of the District of Columbia, the federal law as well requires the affidavit to be submitted to the executive authority of the asylum state to cause an arrest. 18 U.S.C.A. § 3182.

I conclude that, on the present state of the record, the affidavit in support of the information does not allege sufficient evidence of probable cause to justify extradition. Unless the defect in the affidavit is successfully cured by additional affidavit evidence by noon on Friday, October 3, 1969, the habeas corpus writ will be made absolute and the accused released.

■■■ The current defect in the affidavit to support the Governor's Warrant raises one further problem. There have been, as has been noted, applications for bail in this case. The accused is currently held without bail on the basis of the Governor's Warrant. Until the defect is cured, it would follow that the commitment without bail pursuant to the Governor's Warrant must be suspended and the accused must be treated as a suspected fugitive awaiting formal requisition. He is therefore entitled to bail.

The original bail fixed by the Louisiana court in November 1967 was $5,000. The Louisiana burglary was allegedly committed in August of 1967. In March of 1967, Mr. Grano pleaded guilty to burglary in Delaware. He failed to appear at sentencing in June 1967. Mr. Grano was arrested in December 1967 in New Jersey. He did not waive extradition to Delaware and was extradited on a Governor's Warrant. He was finally sentenced on April 5, 1968.

As shown by the presentence report in this Court, his criminal record includes convictions for malicious mischief, unlawful use of a motor vehicle without the consent of the owner, criminal possession of a pistol, burglary in Nevada, larceny of an automobile, miscellaneous minor offenses and a juvenile record.

Bail is fixed at $15,000. It is so ordered.