· 497 P.2d 413

**Application of Unie L. DUGGER.**

**STATE of Arizona ex rel. Gary K. NELSON, Attorney General of Arizona; and the STATE OF OHIO, Real Party in Interest, Appellants,**

v.

**Unie L. DUGGER, Appellee.**

**No. 1 CA–HC 26.**

Court of Appeals of Arizona, Division 1, Department A.

May 18, 1972.

Gary K. Nelson, Atty. Gen. by William P. Dixon, Asst. Atty. Gen., Phoenix, for appellants.

Lawrence C. Cantor, Phoenix, for appellee.

DONOFRIO, Judge.

This is an appeal by the State of Arizona, ex rel. Gary K. Nelson, Attorney General of Arizona, and the State of Ohio, Real Party in Interest, from an order of the Superior Court of Maricopa County making a Writ of Habeas Corpus permanent, thereby releasing the appellee (defendant Ernie L. Dugger) and quashing the warrant issued by Governor Jack Williams of the State of Arizona for the extradition of appellee Dugger to the State of Ohio to answer for the crime of forgery.

Appellants perfected the appeal and filed their opening brief. After appellee failed to file an answering brief appellants moved that the appeal be submitted for decision. A stipulation was then entered into extending the time for the appellee's brief, or in the alternative, that appellee's counsel would move for leave to withdraw. Neither of these events having taken place, this Court ordered the appeal submitted without argument. We do not know why appellee failed to file an answering brief, but to serve the ends of justice we feel compelled to consider the appeal on its merits and not take appellee's failure as a confession of reversible error. Blech v. Blech, 6 Ariz.App. 131, 430 P.2d 710 (1967).

The pertinent facts are as follows. A requisition for the interstate rendition,[1] commonly referred to as extradition, of the defendant was received by Governor Williams in April 1971 from the State of Ohio. The application for extradition was submitted to the Attorney General of Arizona for investigation and report pursuant to A.R.S. § 13–1304. On May 5, 1971, a hearing was held in a room of the Attorney General's office. At the hearing it was determined that the papers from Ohio were not properly authenticated and that there was a doubt in the hearing officer's mind as to whether Dugger had committed a crime. The hearing officer set forth these defects in a memorandum to Governor Williams who returned the application to the Governor of Ohio for the reasons above mentioned, enclosing the memorandum from the hearing officer. Thereafter the Governor of Ohio resubmitted the application properly authenticated. The hearing officer then reconsidered the matter and, after discussions with the prosecuting authorities of Ohio and examination of the criminal statutes of that state, was satisfied that the charge of forgery in violation of § 2913.01, Ohio Revised Code as made, constituted the charge of a crime and recommended the granting of the extradition. The affidavit of Lawrence E. Lee, Jr., made before Municipal Judge Robert S. Betz of Ohio alleged in substance that Dugger did, with intent to defraud, falsely make, forge and counterfeit a certain check, setting forth the $20 check which was drawn on the Valley National Bank signed by Dugger for a floor covering business with his name as payee, and that with intent to defraud he did utter and publish as true and genuine said forged and counterfeited check, knowing it to be forged and counterfeited contrary to § 2913.01, Revised Code of Ohio. Upon the recommendation of the Attorney General's office that everything was in order, Governor Williams issued his Governor's warrant on extradition, directing appellee's arrest and delivery to the authorities of Ohio.

The trial court made no findings of fact and the record does not reflect the reasons for the trial court's ruling. We shall,

1. In Lascelles v. Georgia, 148 U.S. 537, 13 S.Ct. 687, 37 L.Ed. 549 (1893), the U.S. Supreme Court uses "rendition" rather than "extradition" as the proper word when referring to surrender of interstate criminals.

therefore, consider all the objections that were raised to the Governor's warrant by appellee before the trial court. These can be listed in the following three main categories:

1) that the requisition and the accompanying papers for the interstate extradition were not legally sufficient;

2) that the proceedings were instituted to collect a debt; and

3) that there was not a proper hearing before the Governor of Arizona or his agent.

■ Before answering these questions it is well to review some basic rules of law. Interstate rendition or extradition is the right of one state to demand from the asylum state the surrender of a fugitive from justice from the demanding state when the fugitive is found in the asylum state. It is provided for by the following clause in Article IV, Sec. 2, paragraph two, of the United States Constitution:

"A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

See Innes v. Tobin, 240 U.S. 127, 36 S.Ct. 290, 60 L.Ed. 562 (1916); Biddinger v. Commissioner of Police, 245 U.S. 128, 38 S.Ct. 41, 62 L.Ed. 193 (1917). Under our law it is the duty of the Governor of this State to deliver the fugitive to the demanding state. A.R.S. § 13–1302.

■ Appellee, without pointing out any specifics, has challenged the requisition papers and the sufficiency of the charge. It is essential only that a crime be charged against the fugitive, and when a complaint, indictment, affidavit or other appropriate instrument clearly describes the crime charged it is sufficient even though such instrument may possibly not be good pleading. Where the fugitive defendant is lawfully charged, no evidentiary facts as to his guilt or innocence with reference to the commission of the crime are material except insofar as it may be necessary in identifying him as the person charged with the crime. A.R.S. § 13–1320. See Pierce v. Creecy, 210 U.S. 387, 28 S. Ct. 714, 52 L.Ed. 1113 (1908); Rogers v. Boies, 106 Ariz. 468, 478 P.2d 92 (1970).

In Ex Parte Rubens, 73 Ariz. 101, 238 P.2d 402 (1951), our Supreme Court held that the Arizona statutes are in harmony with the federal statutes, and said:

"Unless the indictment or affidavit is clearly void, its validity will be left to the courts of the demanding state. (citations omitted)" 73 Ariz. at 108, 238 P.2d at 406

Our entire Uniform Criminal Extradition Act, A.R.S. §§ 13–1301 to 13–1328, and particularly the sections involved, §§ 13–1303 and 13–1305, are in keeping with the pronouncements of our U.S. Supreme Court. § 13–1305 provides just what the requisition papers must show, and reads:

"A warrant of extradition shall not be issued unless the documents presented by the executive authority making the demand show that:

"1. Except in cases arising under §13–1306, the accused was present in the demanding state at the time of the commission of the alleged crime, and thereafter fled from the state;

"2. The accused is now in this state, and

"3. Is lawfully charged by indictment found or by information filed by a prosecuting officer and supported by affidavit to the facts, or by affidavit made before a magistrate in that state, with having committed a crime under the laws of that state, or that he has been convicted of a crime in that state and has escaped from confinement or broken his parole."

■ It also must be borne in mind that the motive or purpose of the authorities of the demanding state in asking the arrest and return of the fugitive is not a subject for inquiry or investigation in the asylum

state although a hearing sometimes takes that direction. See Commonwealth ex rel. Hunt v. Groman, 169 Pa.Super. 68, 82 A.2d 278 (1951).

■ After the Governor's warrant issues an accused may bring habeas corpus to question the sufficiency of the requisition. In Application of Oppenheimer, 95 Ariz. 292, 389 P.2d 696 (1964), cert. denied, 377 U.S. 948, 84 S.Ct. 1359, 12 L.Ed. 2d 311, our Supreme Court has set forth the duty of the trial court when an application for a writ is made. The court said: ". * * * The court is then under the duty to find these jurisdictional facts, viz.: (1) that the complaint issued out of the demanding state was made on an affidavit; (2) that it substantially charges an offense; (3) that it is made to appear the accused is a fugitive from justice. * * *" 95 Ariz. at 296, 389 P.2d at 700

The court then went on to say:

"In Arizona, the writ of habeas corpus may be used only to review matters affecting a court's jurisdiction. State ex rel. Jones v. Superior Court, 78 Ariz. 367, 280 P.2d 691. Even where there has been a denial of due process of law, it must be such as to deprive a court of jurisdiction in order to permit of the issuance of the writ. * * *" 95 Ariz. at 297, 389 P.2d at 700

Briefly put, the trial court is limited to determining whether the right person is involved and whether the requisition and the accompanying papers meet the conditions of our Uniform Criminal Extradition Act and specified in the Constitution and laws of the United States.

■ We have carefully reviewed the record in this case and find that the papers from the demanding State of Ohio meet every requirement of the law. They are properly authenticated. The crime of forgery exists in Ohio and the requisition papers specifically allege the commission of this crime by defendant-appellee. It is admitted that appellee was present in Ohio at the time of the alleged crime and that he is now in Arizona. He was charged with the crime of forgery upon an affidavit duly subscribed before a magistrate of the State of Ohio, and a warrant for his arrest duly issued. To answer the first category of objections, we would hold that the requisition and extradition papers are legally sufficient.

■ The next category of objections involves the question of whether the proceedings were instituted to collect a debt. Although appellee testified as to his health and certain marital problems, and some reference was made to an affidavit for the failure to provide for minor children, we are unable to find anything in the record to support the contention that the proceedings were instituted to collect a debt. Regarding the propriety of inquiring into the motives of a prosecutor when it involves the question of the guilt or innocence of the defendant of the criminal offense charged, we believe the motive, if any, is not a proper subject of inquiry. See Commonwealth v. Groman, supra.

■ Regarding the last category of objections, we note that one hearing was held wherein the Attorney General's office went into the matter quite thoroughly and came up with a memorandum of defects which resulted in the Governor's returning the papers to Ohio. It is true no other hearing was held after the new papers arrived, however it appears that the matter was carefully studied. The law appears to be well settled that the Governor of the asylum state may issue his warrant without a hearing. Application of Oppenheimer, supra.

We find the requisition papers were legally sufficient and that the court erred in granting the habeas corpus.

Judgment reversed with directions to quash the writ of habeas corpus.

STEVENS, P. J., and CASE, J., concur.