573 P.2d 504

**In the Matter of the APPLICATION OF Warren D. STEWART for Writ of Habeas Corpus.**

**STATE of Arizona, Appellant,**

v.

**Warren David STEWART, Appellee.**

**No. 1 CA–HC 42.**

Court of Appeals of Arizona,
Division 1,
Department A.

Oct. 20, 1977.

Rehearing Denied Nov. 22, 1977.

Review Denied Jan. 10, 1978.

Bruce E. Babbitt, Arizona Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., and Diane M. DeBrosse Hienton, Asst. Atty. Gen., Phoenix, for appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P. C. by John H. Westover, Phoenix, for appellee.

OPINION

NELSON, Presiding Judge.

On April 20, 1976 the Governor of the State of Missouri requested the extradition of Warren David Stewart, who had been

charged in that state with the crime of enticing away children from their guardian. A Governor's Warrant of Extradition was issued by Arizona Governor Raul Castro on June 7, 1976. That warrant was challenged by Stewart in the Yuma County Superior Court on a Petition for a Writ of Habeas Corpus. The writ was granted by the trial court based "on the lack of probable cause in the papers presented by the demanding state." This appeal was then perfected by the State of Arizona.

■ Appellant's major contention on appeal is that a determination of probable cause for the issuance of the original arrest warrant in the demanding state is not to be made by the asylum state in an extradition case. We agree. Once a governor's warrant has issued, an accused may bring a habeas corpus action to question the adequacy of the requisition. *Applications of Oppenheimer*, 95 Ariz. 292, 389 P.2d 696, *cert. den.*, 377 U.S. 948, 84 S.Ct. 1359, 12 L.Ed.2d 311 (1964). However, the duties of the trial court when such an application is made have been specifically limited by the Arizona Supreme Court and these limitations must be adhered to. The areas of proper inquiry are limited to findings: "(1) that the complaint issued out of the demanding state was made on an affidavit; (2) that it substantially charges an offense; (3) that it is made to appear the accused is a fugitive from justice." *Applications of Oppenheimer, supra*; *Powell v. State*, 19 Ariz. App. 377, 507 P.2d 989 (1973); *Application of Montgomery*, 26 Ariz.App. 146, 546 P.2d 1155 (1976).

■ In analyzing appellee's habeas corpus petition within these parameters we find that the petition should have been denied by the trial court. Appellee primarily argued to that court that the complaint was inadequate on its face. The complaint, based on an affidavit, essentially charged the offense using the statutory language and including pertinent facts. A similar challenge was adjudicated by the Arizona Supreme Court in *Ex parte Rubens*, 73 Ariz. 101, 238 P.2d 402 (1951), *cert. den.*, 344 U.S. 840, 73 S.Ct. 50, 97 L.Ed. 653 (1952), where

they found that the sufficiency of a complaint or indictment is to be determined by the law applicable where the complaint is laid, and unless the indictment or affidavit is clearly void, its validity will be left to the courts of the demanding state. *See also Rogers v. Boies*, 106 Ariz. 468, 478 P.2d 92 (1970).

Finally, the fact that the appellee is the individual charged by the complaint and therefore a fugitive from justice is unquestioned.

■ At the habeas corpus hearing, Stewart introduced considerable evidence which bore on his innocence of all charges. Stewart is the father of the children he is charged with enticing away. He testified that their mother left them with their grandparents for an extended period of time and consequently, under the advice of counsel, he went to Missouri to bring them back to Arizona to obtain their legal custody. While this involves an unfortunate family situation, it cannot alter the foundations of Arizona's extradition law which precludes the admission of evidentiary facts regarding guilt or innocence from being considered in habeas hearings stemming from extradition procedures. A.R.S. § 13–1320; *Application of Dugger*, 17 Ariz.App. 297, 497 P.2d 413 (1972). We do not read the *Application of Montgomery, supra* case so broadly as to allow such inquiries. While these limitations are restrictive, they are necessary to the administration of extradition proceedings among the states.

The court in *Rubens, supra*, citing *Pierce v. Creecy*, said:

"If more were required it would impose upon courts * * * the duty of a critical examination of the laws of states with whose jurisprudence and criminal procedure they can have only a general acquaintance. Such a duty would be an intolerable burden, * * * irritable to the just pride of the states, and fruitful of miscarriages of justice. *Pierce v. Creecy*, 210 U.S. 387, 28 S.Ct. 714, 720, 52 L.Ed. 1113 (1908)." 73 Ariz. at 108, 238 P.2d at 406 and 407.

We have carefully analyzed the warrants and affidavit in light of these requirements and find that they meet the standards specified by law for extradition documents.

We have been cited to two federal cases, *Kirkland v. Preston*, 128 U.S.App.D.C. 148, 385 F.2d 670 (1967) and *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), as mandating a different result. We disagree. *Gerstein v. Pugh, supra,* did not involve extradition proceedings and in no way purported to review or overrule the available body of case law developed by the Supreme Court of the United States on the subject. *Pierce v. Creecy, supra*; *see Interstate Rendition and the Fourth Amendment,* 24 Rutgers Law Review 551 (1970), and cases collected therein.

*Kirkland v. Preston, supra,* involved an interpretation of the Code of the District of Columbia as opposed to the Constitution of the United States, and is, therefore, not binding on this Court in its Constitutional interpretation. *Cf. State v. Rodriguez,* 17 Ariz.App. 553, 499 P.2d 167 (1972), and *State v. Locks,* 91 Ariz. 394, 372 P.2d 724 (1962).

We believe that the language of the United States Supreme Court in *Biddinger v. Commissioner of Police,* 245 U.S. 128, 38 S.Ct. 41, 62 L.Ed. 193 (1917), is even more valid in 1977 than it was in 1917, in view of the progress we have made in the protection of individual rights since that time. In commenting on an interpretation placed upon the constitutional and statutory provisions then in effect regarding extradition consonant with Arizona decisions, the Court said:

> "Courts have been free to give this meaning to the Constitution and statutes because in delivering up an accused person to the authorities of a sister state they are not sending him for trial to an alien jurisdiction, with laws which our standards might condemn, but are simply returning him to be tried, still under the protection of the federal Constitution but in the manner provided by the state against the laws of which it is charged that he has offended." 245 U.S. at 133, 38 S.Ct. at 43, 62 L.Ed. at 198.

We have not been cited to any authority, nor have we found any, that Missouri's standards in these matters do not comply with federal Constitutional standards. In any event, such claims can be made and litigated in Missouri. *See e. g., Kansas City v. Fulton,* 533 S.W.2d 677 (Mo.App.1976); *State v. Kent,* 535 S.W.2d 545 (Mo.App. 1976).

The judgment of the superior court is reversed and this cause is remanded with directions to enter an order denying the appellee's Petition for Habeas Corpus.

FROEB, C. J., and HAIRE, J., concur.