## STOKES SAMUEL MILLER, JR. *v.* WARDEN, BALTIMORE CITY JAIL

[No. 93, September Term, 1971.]

*Decided February 8, 1972.*

378

The cause was argued before MORTON, ORTH and CARTER, JJ.

*Harold I. Glaser* for appellant.

*Josef Rosenblatt, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Hilary D. Caplan, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

CARTER, J., delivered the opinion of the Court.

The appellant Stokes Samuel Miller, Jr. made application for a writ of habeas corpus under the authority of Md. Code Art. 41, § 25 which was denied by Judge Joseph L. Carter, sitting in the Baltimore City Court. He appeals from this judgment contending 1) that the evidence was legally insufficient to justify the court in ruling that he was the fugitive wanted in the rendition warrant, 2) that the rendition warrant was invalid because of the State's failure to comply with the time limitations of Md. Code Art. 41, §§ 28, 29 and 31, 3) that he was denied a fair hearing on his petition for habeas corpus because of the incompetence of counsel, and 4) that the court erred in failing to require the State to produce the original Maryland fugitive warrant of arrest. Contentions 1 and 2 were set forth in the appellant's application for the writ. Contentions 3 and 4 grew out of the hearing on the application.

The relevant parts of the record show that the appel-

lant was arrested on October 10, 1969, on a charge of having committed robbery in Baltimore City. On October 29 he was released on bail. On November 10 his bail was cancelled because of two detainers then placed against him for robbery charges pending in Delaware and Pennsylvania. At the time of the cancellation of his bail, a Maryland fugitive warrant was issued for his arrest based on the Delaware charges pursuant to Md. Code Art. 41, § 28. Thereupon the appellant was arrested and confined in the Baltimore City jail under both the Maryland warrant issued for the Maryland robbery charges and the Maryland fugitive warrant issued on account of the Delaware charges. Thereafter he was continuously confined. The Pennsylvania charges were evidenced by a warrant from that state upon which a Maryland fugitive warrant was ultimately issued on January 9, 1970. The Maryland robbery charges were dismissed by the State on September 15, 1970. On November 5, 1970, the Governor of Maryland held an extradition hearing on the Pennsylvania demand and issued a warrant of rendition to that state.[1] It is from his arrest under this rendition warrant that the appellant sought release in the instant case under a writ of habeas corpus.

Sergeant Thomas Tracey of the Baltimore City Police testified at the habeas corpus hearing and introduced in evidence the extradition warrant issued by Governor Mandel on November 5, 1970, but did not produce the Maryland fugitive warrant upon which the appellant had been arrested on November 10, 1969. William Shirer, an assistant manager of Gino's restaurant in Delaware County, Pennsylvania, testified that about 10:30 a.m. on November 6, 1969, the appellant had held up his restaurant at gunpoint. Detective Dickerson of the Delaware County, Pennsylvania Police testified that about November 12, 1969, he had received information from the Baltimore City Police that a person answering the descrip-

---

1. Md. Code Art. 41, § 33 provides that the Governor may decline to issue a rendition warrant so long as there are outstanding charges against the person in this state.

tion of a man who had held up Gino's on November 6, 1969, had been arrested in Baltimore. Thereafter he presented to William Shirer a group of twelve photographs, from which Shirer had selected the photograph of the appellant as one of the persons who had robbed Gino's restaurant on November 6, 1969.

During the cross examination of Detective Dickerson the appellant requested and was granted the privilege of conducting a part of the cross examination. At the conclusion of Detective Dickerson's testimony, court-assigned counsel for the appellant advised the court that the appellant had just informed him that he considered him to be incompetent and therefore that counsel desired that the court permit him to withdraw from the case. The court refused to permit him to withdraw stating that he had represented the appellant very competently as far as the court could determine. The court then inquired if the appellant wished to testify and he indicated that he did. He testified he had seen his attorney only once before trial at the Baltimore City jail. His attorney then interrupted the witness saying the statement was untrue. After this exchange, counsel refused to examine the appellant notwithstanding the court's request that he do so. The court then suggested the appellant proceed by making his own statement which he did. His testimony in substance was a complaint that he had been held in jail from November 10, 1969, to September 15, 1970, on Baltimore City charges which had never been tried and had ultimately been dismissed. He further complained he had been held under the Pennsylvania and Delaware detainers since November 10, 1969, in violation of the provisions of Md. Code Art. 41, § 28, 29, and 31. He further stated that he was not physically present in Pennsylvania on November 6, 1969, at the time the Pennsylvania offense was committed. In a discussion between the court and the appellant concerning the appointment of an attorney to prosecute an appeal at the conclusion of the case, the appellant said, "Mr. Lazzaro (defense counsel) is a good lawyer. It is not his fault what happened to

me. It is the system. He was still incompetent in my case."

Mary Miller, wife of the appellant, testified that the appellant had been at their home in Baltimore City during the morning of November 6, 1969.

## I

Md. Code Art. 41, §§ 16-43 inclusive, known as the Uniform Criminal Extradition Act deals with the procedure to be employed in extraditing a fugitive to the demanding state. Section 25 provides in substance that after a warrant of rendition shall have been issued by the Governor of Maryland and the alleged fugitive arrested thereunder, the fugitive may test the legality of his arrest by applying for a writ of habeas corpus before a judge of a court of record. If the application is denied, the alleged fugitive may appeal to this Court. In restating the principles involved in acting upon an application for a writ of habeas corpus in these situations, this Court in *Campbell v. State,* 10 Md. App. 406 at 410-411 quoted from the opinion in *Solomon v. Warden,* 256 Md. 297 at 300-301 as follows:

"The issuance of a warrant of rendition by the Governor of the asylum state raises a presumption that the accused is the fugitive wanted and it is sufficient to justify his arrest, detention and delivery to the demanding state. *See, e.g., Johnson v. Warden,* 244 Md. 384, 388 (1966) ; *Koprivich v. Warden,* 234 Md. 465, 468-69 (1964), and the cases therein cited. In order to rebut the presumption the accused must prove *beyond a reasonable doubt* either that he was not present in the demanding state at the time of the alleged offense or that he was not the person named in the warrant, and upon proof of the one or the other he is entitled to be released. * * * It should be noted also that the presumption must be rebutted by 'overwhelming' evidence, *Mason v. Warden,* 203 Md.

659, 661 (1953), thus '[m]ere contradictory evidence on the question of presence in or absence from the state demanding the accused is not sufficient * * *.' *Koprivich v. Warden, supra*, at 469.

"Although the testimony of appellant furnishes the basis for 'contradictory evidence', it is apparent that his mere bald statements do not constitute * * * 'overwhelming evidence' * * *."

Applying the holdings and rationale in *Campbell v. State, supra* to the recited evidence, we have no difficulty in concluding that Judge Carter was not clearly in error in finding that the appellant had failed to rebut the presumption that he was the fugitive wanted in the rendition warrant by proving beyond a reasonable doubt either 1) that he was not present in the demanding state at the time of the alleged offense or 2) that he was not the person named in the warrant of rendition.[2]

## II

The contention that the rendition warrant was invalid because the State had not complied with the provisions of Md. Code Art. 41, §§ 28, 29 and 31 is likewise without merit. Section 28 provides that whenever a person in this State shall be charged with the commission of a crime in another state, the judge before whom the charge is made shall issue a warrant for his arrest. Upon his arrest he shall be brought before some judge who may be convenient to the place of arrest. Section 29 provides that when the arrestee is brought before a judge, if it appears that he is the person charged with having committed the alleged crime and that he has fled from justice, the judge shall commit him to the county jail for not

2. In *Ray and Huntley v. Warden*, 13 Md. App. 61 (1971) we held that a rendition warrant valid on its face gives rise to a presumption that it was *properly issued* in the absence of evidence to the contrary. In the instant case the rendition warrant was valid on its face and there was no evidence adduced to rebut the presumption.

more than thirty days pending the issuance of a rendition warrant by the Governor. Section 31 provides that if the accused is not arrested under a rendition warrant issued by the Governor within the thirty-day period specified in the commitment issued under § 29, the judge may recommit him for a further period not to exceed 60 days from the date of the recommitment.

Even though the appellant was held under Maryland fugitive warrants from November 10, 1969 to September 15, 1970, in violation of the time limitations prescribed by Art. 41, §§ 29 and 31, it would not constitute an illegal confinement, since he was also under arrest during this period by virtue of an outstanding warrant for an offense committed in Maryland which was sufficient to justify his confinement irrespective of the fugitive warrants. However, the evidence does show that during the period from September 15, 1970 (when the Maryland warrant was dismissed) to the date the rendition warrant was issued on November 5, 1970 that he had been confined under the fugitive warrants in violation of Art. 41, §§ 29 and 31. The fact that he was illegally confined in violation of these statutory provisions for a period of about 60 days or for any other period prior to the issuance of the rendition warrant does not affect its validity. In passing upon a similar question, the Court of Appeals speaking through Judge Smith said in *Shields v. State*, 257 Md. 384 at page 394:

"It is the claim of Shields that the maximum limit of time a person may be held on a fugitive warrant is 90 days, that the state continued the warrant for six months and then *nolle prosed* it on April 21, 1969, that there was no fugitive warrant in effect when the Governor's warrant was issued on May 27 and, therefore, Shields must be released. Whether a second fugitive warrant was issued does not appear. There would have been nothing to prevent such issuance. The answer to this contention on the

part of Shields is to be found in *Willin v. Sheriff*, 201 Md. 667, 669, 95 A. 2d 87 (1953), where Judge (later Chief Judge) Henderson said, 'The matter to be tested is not the legality of a previous arrest, but the legality of the arrest under the warrant of rendition.' * * *"

Applying the holdings and rationale in *Willin v. Sheriff, supra* and *Shields v. State, supra* to the evidence of this case as it relates to Art. 41, §§ 28, 29 and 31, we conclude that the trial judge was not in error in holding that the non-compliance with these statutes was a moot question after the issuance of the rendition warrant and did not adversely affect its validity.

### III

The appellant's third contention that he was denied effective assistance of counsel at his habeas corpus hearing which deprived him of a fair trial is not supported by the evidence. In discussing the matter of the adequacy of counsel in *Minnick v. State*, 4 Md. App. 81, we quoted from *Jones v. Warden*, 244 Md. 720, 721 as follows:

"The Test for measuring the competency of counsel is whether, after examination of all the facts of the case and the making of findings with respect thereto, it appears that the petitioner has been afforded adequate and effective representation. * * *"

See also *Smith v. State*, 1 Md. App. 297, 302. There is no evidence to show inadequate or ineffective representation by the appellant's counsel and his claim to that effect is therefore a bald assertion without probative force.

### IV

The appellant's fourth contention is also clearly without merit. Under the holding in *Willin v. Sheriff, supra* and *Shields v. State, supra* the validity of the original arrest under the Maryland fugitive warrant is of no

consequence in determining the validity of the rendition warrant. Therefore, the State was not required to produce the Maryland fugitive warrant in order to establish the legality of the rendition warrant. Furthermore, if the appellant desire the fugitive warrant for some good reason which is not apparent on the face of the record, he should have made an appropriate motion under Md. Rule 419 a. We conclude, therefore, that there was no error in the trial court's ruling that the existence or validity of the original fugitive warrant was without significance in this proceeding.

*Judgment affirmed.*