382 A.2d 1039 (1978)
Robert Earl SAWYER
v.
STATE of Maine and Sheriff Charles Sharpe.
Supreme Judicial Court of Maine.
February 24, 1978.
Lowry, Platt, Fitzhenry, Lunt & Givertz by Phyllis Givertz (orally), Portland, for plaintiff.
Peter Ballou, Deputy Dist. Atty. (orally), Portland, for defendants.
*1040 Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.
McKUSICK, Chief Justice.
Petitioner Robert Earl Sawyer stands indicted by a grand jury in Chautauqua County, New York, for second degree murder and first degree robbery arising from events which the indictment alleges occurred in Stow, Chautauqua County, New York, on or about February 11, 1977. He was arrested in Maine pursuant to a rendition warrant issued by the Governor of Maine,[1] and he then petitioned in the Cumberland County Superior Court for a writ of habeas corpus to test the legality of his arrest as a fugitive under the Maine Uniform Criminal Extradition Act, 15 M.R.S.A. § 210 (1964). After an evidentiary hearing, a justice of the Superior Court denied the writ, entered judgment for the respondents, and ordered the rendition warrant to be executed. Petitioner appeals,[2] arguing that he sustained his burden of proof at the hearing that he was not in New York at the time the offenses were allegedly committed and that the documentation accompanying the requisition of the Governor of New York State was legally insufficient to support his arrest and extradition.
We deny the appeal.

I. Proof of Fugitive Status

The petitioner testified on his own behalf that in February 1977 he was a resident of Mina Township, Chautauqua County, New York. He further testified that in the course of his business as a carpet installation subcontractor, he had worked periodically in Pennsylvania during the winter of 1977 and that he had been in Pennsylvania "around" February 11, 1977. On cross-examination, however, he admitted that he could have been in New York on that date. The State thereafter produced one Rasmussen, who testified that he had gone bowling with the petitioner in Jamestown, Chautauqua County, New York, on February 11, 1977.
The rendition warrant issued by the Governor of Maine alleges the fact that petitioner Sawyer is a fugitive from justice.[3] That warrant, regular on its face, presumptively established that the petitioner was present in the demanding state at the time of the alleged offense, subject to rebuttal if the petitioner in the habeas corpus proceeding should prove otherwise by "clear and convincing evidence." Walker v. State, Me., 315 A.2d 855, 856 (1974). The justice below found, not only that petitioner had failed to meet his burden, but also that the evidence affirmatively demonstrated that he had been present in New York, the demanding state, at the time of the alleged offense. Petitioner attacks the justice's factual findings on the ground that the testimony of the State's witness, Rasmussen, was not credible. Rasmussen's testimony was not, however, so inherently improbable and incredible as to be unbelievable as a matter of law.[4]See State v. *1041 McFarland, Me., 369 A.2d 227, 229 (1977). In any event, the justice was clearly entitled to find that petitioner's own testimony was unworthy of belief, and, therefore, that petitioner had failed to carry his burden of proof by "clear and convincing evidence" that he was not present in New York, the demanding state, "on or about" February 11, 1977. Assessment of the credibility of witnesses was a task for the presiding justice who heard those witnesses, not for us who have before us only the cold printed pages of the transcript.

II. Sufficiency of Documentation

The requisition from the Governor of New York was accompanied by a copy of the Chautauqua County grand jury indictment and an affidavit by the Acting District Attorney for Chautauqua County attesting to certain facts,[5] but not such as would constitute probable cause for the petitioner's arrest. 15 M.R.S.A. § 203 (1964) provides, in the part here critical, that:
"[The] demand for the extradition of a person charged with crime in another state . . . shall be accompanied by a copy of an indictment found, or information, supported by affidavit in the state having jurisdiction of the crime, or by a copy of an affidavit made before a magistrate in such state, together with a copy of any warrant which was issued thereupon, . . .."
Pointing to the commas placed in the Maine Act around the words "or information" and to the absence of comparable commas in the parallel section 3 of the Uniform Criminal Extradition Act as adopted by the National Conference of Commissioners on Uniform State Laws,[6] petitioner argues that an "indictment found" (as well as an information) must be supported by an affidavit sufficient to establish probable cause to believe that the fugitive committed the charged offense.
We disagree.
The legislature mandates, in no uncertain terms, that Maine's Act, expressly denominated the "Uniform Criminal Extradition Act," 15 M.R.S.A. § 229 (1964), "shall be so interpreted and construed as to effectuate its general purpose to make uniform the laws of those states which enact it." Ibid. This particular uniform law has been adopted, in its original or revised form, in all but three states. National Conference of Commissioners on Uniform State Laws, 1977-78 Reference Book 65. As recognized by that record of enactments, the need for uniformity among the states is particularly acute in this area of law, involving as it does principles of interstate comity under an umbrella of controlling federal law. See U.S.Const. art. IV, § 2; Poulin v. Bonenfant, Me., 251 A.2d 436, 437 (1969).
The federal act, 18 U.S.C. § 3182 (1948),[7] implementing article IV, § 2 of the United *1042 States Constitution, by its language, which the Uniform Act parallels, appears to make either an indictment or a probable cause affidavit adequate documentation. We need not, however, reckon with any conflict between what is adequate documentation to require the asylum state to respond under the federal statute and what is required by the Maine Uniform Criminal Extradition Act. We find no conflict. As a matter of construction of our section 203, a copy of the indictment, when based on a grand jury's determination of probable cause, is all that is required.[8] As held by the Colorado Supreme Court in rejecting a contention that an affidavit alleging probable cause must accompany an indictment:
"It is clear that an affidavit is not required where the charge is made by action of the grand jury, as it was here. The indictment imports probable cause; it embodies a grand jury's judgment that constitutional probable cause exists." (Emphasis in original) People v. Jackson, 180 Colo. 135, 138, 502 P.2d 1106, 1108 (1972).
Our examination of the relevant history of Maine's extradition statute shows that, despite the difference in punctuation, the legislature did not mean any substantive departure from the Uniform Act. The promptness with which Maine enacted both the original 1926 Uniform Act and the 1936 revision evinces our legislators' eagerness to achieve and maintain uniformity in this important area of interstate cooperation. When the Maine legislature in 1929 first enacted the Uniform Act, it followed in section 3 the exact language and punctuation of the Commissioners' Act, namely:
"No demand for extradition of a person charged with crime in another state shall be recognized by the Governor unless in writing and accompanied by a copy of an indictment found or by an information supported by affidavit in the state having jurisdiction of the crime, or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereon." P.L. 1929, ch. 124, § 3 (emphasis added). Compare Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings 592 (1926).
The 1926 report of the Commissioners' committee that drafted the original Uniform Act leaves no doubt that they meant the phrase "supported by affidavit" to qualify "information" only. That report states:
"Following the instruction of the last conference, your committee have incorporated the provision [for extradition on information] in this draft, and suggest that it may be generally accepted on the theory of comity. But we provide that the information must be supported by somebody's affidavit to the facts, as otherwise it is sure to meet more or less objection in many legislatures." Id. at 587.
The commas setting apart the phrase "or information" first appeared in the Maine statute when the legislature adopted the 1936 revision of the Uniform Act. P.L. 1939, ch. 10, § 1. That enactment was manifestly designed to track the revisions made in the uniform law, and not intended to produce any substantive difference. The *1043 Legislative Record of that 89th legislature is searched in vain for the slightest indication that the Maine lawmakers meant to deviate from revising the Maine Uniform Criminal Extradition Act in the same respects as the Commissioners had done in 1936. Cf. Taylor v. Inhabitants of the Town of Caribou, 102 Me. 401, 405-06, 76 A. 2, 4 (1907). In view of the radical departure from the uniform law that would result from requiring that an indictment be supported by an affidavit alleging probable cause, we can ascribe no importance to the two additional commas inserted in the Maine version. They merely reflect an approach to punctuation by Maine's legislative draftsman different (in form, but not substance) from that of the Uniform Laws Commissioners' committee on style. Although in general punctuation can help in construing an unclear statute, see Hayes v. State, Me., 247 A.2d 101, 102 (1968), the two commas inserted in section 3 of Maine's version of the Uniform Act are themselves the sole cause of any ambiguity at all in that section.[9] That ambiguity is completely swept away both by the express command that section 3 be construed to promote uniformity of law among the states and by considerations of the practical dealings among the states on extradition matters.
Under New York law the grand jury, by returning an indictment, has found probable cause. N.Y.Crim.Proc. Law § 190.65 (McKinney 1971); e. g., Friess v. Morgenthau, 86 Misc.2d 852, 383 N.Y.S.2d 784 (1975). A copy of that indictment was before the Governor of Maine when he issued his rendition warrant. To require that New York in addition furnish an affidavit establishing probable cause would force the demanding state to paper the same wall twice. This we need not, and will not, do.
To construe the Maine extradition statute to require a double showing of probable cause, whom most if not all other states including New York[10] find the indictment adequate by itself, would violate the natural expectation of reciprocity among the law enforcement agencies of the several states. As a practical matter, when the tables were turned and Maine was the demanding state, Maine could well receive less than wholehearted cooperation from New York or another responding state. We are confident that the 1939 Maine legislature never intended, by placing commas around the phrase "or information," to put our own law enforcement agencies at such a disadvantage.
The entry must be:
Appeal denied.
Judgment affirmed.
DELAHANTY, J., did not sit.
NOTES
[1] 15 M.R.S.A. § 207 (1964).
[2] Upon petitioner's motion, the justice stayed his order insofar as it related to execution of the rendition warrant pending appeal.
[3] The Governor's rendition warrant was, in turn, based upon the requisition from the Governor of New York. 15 M.R.S.A. § 203 (1964) provides, in pertinent part:

"No demand for the extradition of a person charged with crime in another state shall be recognized by the Governor unless in writing alleging . . . that the accused was present in the demanding state at the time of the commission of the alleged crime and that thereafter he fled from the state . . .." The allegations of the written demand or requisition in this case satisfied those requirements of section 203. See Walker v. State, Me., 315 A.2d 855, 856 (1974).
[4] Petitioner's attack on Rasmussen's credibility is based upon the alleged discrepancy in the latter's recollection of the name of the town in which he and the petitioner had gone bowling. In an affidavit Rasmussen had identified the town as Ellica, whereas at trial he testified that it was Jamestown. According to Rasmussen's own uncontradicted testimony, however, "there is no difference between Jamestown and the township of Ellica." Thus, there was no genuine discrepancy in Rasmussen's testimony and certainly no such discrepancy as would undermine his credibility to the extent contended by the petitioner.
[5] The district attorney attested that the petitioner, Robert Earl Sawyer, had been indicted for certain crimes; that the crimes constituted violations of penal statutes; that he (the district attorney) believed petitioner to be a fugitive from justice, and in custody in Maine; that "upon information and belief" the petitioner was present in New York on or about the 11th day of February 1977; and that the demand was "not instituted to enforce a private claim." The affidavit apparently was filed in compliance with N.Y.Crim.Proc. Law § 570.54 (McKinney 1971). See also Uniform Criminal Extradition Act § 23 (1936); 15 M.R.S.A. § 223 (1964) (amended 1972); cf. Poulin v. Bonenfant, Me., 251 A.2d 436, 439 (1969).
[6] Section 3 of the Uniform Criminal Extradition Act provides, in part, that the demand shall be "accompanied by a copy of an indictment found or by information supported by affidavit in the state having jurisdiction of the crime, or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereupon; . . ."
[7] 18 U.S.C. § 3182 (1948), derived from an enactment of 1793, provides:

"Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear." (Emphasis added)
[8] Several jurisdictions, emphasizing the Fourth Amendment requirement that an arrest for extradition must be based upon probable cause, indicate that an indictment based upon a grand jury's determination of probable cause will satisfy the requirement of documentation by the demanding state. See, e. g., Ierardi v. Gunter, 528 F.2d 929 (1st Cir. 1976); Davis v. Behagen, 321 F.Supp. 1216 (S.D.N.Y.), aff'd sub nom. United States ex rel. Davis v. Behagen, 436 F.2d 596 (2d Cir. 1970); Kirkland v. Preston, 128 U.S.App.D.C. 148, 385 F.2d 670 (1967); Grano v. State, 257 A.2d 768 (Del.Super.1969); People ex rel. Lipshitz v. Bessenger, 273 App.Div. 19, 75 N.Y.S.2d 392 (1947); People v. Doran, 401 Mich. 235, 258 N.W.2d 406 (1977); cf. Gerstein v. Pugh, 420 U.S. 103, 117 n.19, 95 S.Ct. 854, 865 n.19, 43 L.Ed.2d 54, 67 n.19 (1975).
[9] The State argues that the first comma serves merely to separate the series of alternatives ("indictment found, or information, supported by affidavit in the state having jurisdiction of the crime, or . . . an affidavit . . . before a magistrate") and that the second and third commas set off the modifying clause "supported by affidavit in the State having jurisdiction of the crime" which applies only to the "information" alternative and not to the "indictment found" alternative. Although we find it unnecessary to engage in such exegesis, the State's reading of the punctuation is as plausible as that of the petitioner and is consistent with the common-sense meaning of the statute, as the petitioner's reading of the punctuation is not.
[10] N.L.Crim.Proc. Law § 570.08 (McKinney 1971). See People ex rel. Lipshitz v. Bessenger, supra.